# AMERICAN CASUALTY CO. OF READING, PENNSYLVANIA, ET AL. v. DEPARTMENT OF LICENSING AND REGULATION INSURANCE DIVISION

[No. 1515, September Term, 1981.]

*Decided July 12, 1982.*

158

The cause was argued before LOWE and MASON, JJ., and GEORGE W. BOWLING, Associate Judge of the Seventh Judicial Circuit, specially assigned.

*William J. Rubin,* with whom were *Emanuel H. Horn,* and *Dickerson, Nice, Sokol & Horn* on the brief, for appellants.

*Thomas P. Barbera, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General of Maryland* and *Michael L. Cohen, Assistant Attorney General,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

Appellants are seven insurance companies doing business in Maryland, all members of what is known as the CNA Group. They are subject to an annual tax imposed by Md. Ann. Code (1980 Repl. Vol.), Art. 81, § 136 (a) upon the percentage of gross direct premiums allocable to Maryland and written during the preceding year. In 1977, § 139 of that article (Code, 1975 Repl. Vol. & 1976 Supp.) provided that insurance companies subject to such tax

> ". . . shall, on or before March 15th in each year, file with the Insurance Commissioner a report of the new and renewal gross direct premiums less return premiums written by it during the preceding calendar year . . . ."

Concomitantly, the tax owed under § 136 (a) was to be paid to the Insurance Commissioner "at the time fixed for filing the report." § 140. If the taxes were not paid "when the report or declaration is filed," the defaulting company "shall be subject to a penalty of five percent and interest at the rate of one percent per month from the date the report was due." § 140. Appellants mailed their reports and payments from Chicago, Illinois on March 14, 1977, but they were not received by the Commission until March 16, 1977.

Had that scenario occurred prior to 1975, this case would

not be before us because the practice of the Commissioner had been to accept, as timely filed, mailed reports and payments "as long as the postmark reflects a date of on or before March 15th." In 1974, however, the Commissioner was advised by an Assistant Attorney General that the term "file" unambiguously required a physical delivery to the Commissioner and, therefore, that the prior administrative practice should end. On October 20, 1975, the Commissioner sent a notice to all companies subject to the tax, including appellants, that thereafter such reports and taxes "must be received annually in the Commissioner's office on or before March 15." He added that "any administrative practice followed in the past with respect to filing premium tax reports . . . shall be immediately discontinued by this Division."

In 1979, the new interpretation was invoked against an insurance company, but the penalty was abated by the Maryland Tax Court because that company was able to show that it had never received the aforementioned notice; however, the Tax Court held that the term "file" was unambiguous, and that it "clearly and explicitly means that there be a delivery to the Insurance Commissioner, not just a mailing." It followed, therefore, that the imposition of the penalty, although "very harsh," was not legally improper. Because of the penalty's harshness, however, that case was remanded to the Insurance Division to reconsider its discre-- tionary right to recommend a refund of the tax paid, pursuant to § 216.

Apparently responding to the Attorney General's interpretation of "file" adopted in that case,[1] the Legislature added to § 139 a subsection (b) which now reads:

---

1. Senate Bill 262 which ultimately became Ch. 243, 1979 Md. Laws, was sponsored by the Chairman of the Economic Affairs Committee at the request of the Insurance Commissioner "By Senator McGuirk (Departmental — L & R/Insurance Comm.)" Hearing notes from the bill's committee file jacket indicate what appears to have been explained to the committee by the insurance lobbyists:

"— allow premiums filed with the insurance commissioner to be on time if mailed and postmarked on time

"Any report or declaration mailed and postmarked by the U.S. Postal Service on or before the filing date shall be deemed to be in compliance with the filing requirement."

Section 140 was made to conform by substituting, as the break off point for paying the taxes before subjecting the late-filing company to a penalty, "when the report or declaration [mandated by § 139] is *due to be filed",* for the more rigid prior time "when the report or declaration *is* filed." 1979 Md. Laws, Ch. 243, (emphasis added).

The colloquialism, "a day late and a dollar short" took on a special significance to appellants when the Insurance Commissioner imposed a penalty of $25,736.44 on them for filing one day late. This time the Tax Court was either unimpressed or uninformed of mitigating circumstances recited here in the "Agreed Statement of Facts." [2] In either case, it failed to remand for consideration under § 216 as it had before, and that issue, of course, is not for our consideration, even if it were a proper consideration for the Commissioner in this case.

Because no extrinsic interpretative aids are needed or appropriate for statutory language that is unambiguous, *State v. Fabritz,* 276 Md. 416, 421-422 (1975), appellants obviously contend that the Tax Court and the Circuit Court for Baltimore County were both wrong in holding that the verb "file" unambiguously meant to deliver, not merely to

---

— had been practice

— recent A.G.'s opinion said had to be in hands of commissioner

— can cost insurance companies much money in fines if mail is delayed".

2. "In 1977, due to the death in the immediate family of Appellants' employee in charge of filing the Maryland premium tax reports, Appellants' reports and payments of tax were placed in the mail in Chicago, Illinois, on March 14, 1977. All the reports and payments were received in the office of the Insurance Commissioner on March 16, 1977."

The Tax Court declared in its opinion that:

"The only evidence in the case is a stipulation that the Petitioners mailed the returns on the 14th of March, 1977, and that they were received by the Insurance Commissioner on March 16th, 1977."

place in transit for delivery. In interpreting that "ambiguous" term as used in the statutes, appellants would have us consider two extrinsic aids, *i.e.,* the prior administrative practice and the subsequent legislative amendment.

Even if we had found the term to have been touched with ambiguity, appellants' arguments were not so persuasive as to compel reversal. For instance, they argue that the amendment indicates that the Legislature did not agree with the Attorney General's rigid interpretation. To the contrary, it more reasonably indicates that the Legislature did not wish the rigidity of the term it had previously used to apply in the future. If it had not agreed with the Tax Court interpretation, it could have clearly stated its previous intent, and provided a retrospective, as well as future application of that interpretation. It provided only for application in the future.

The prior administrative practice, of course, loses its persuasive effect when we consider that the Commission acknowledged its erroneous interpretation by changing "its practice when so advised." Indeed, the practice of the agency since 1975 is persuasive indicium of what the intent of the Legislature was originally, even if the term was ambiguous. But it was not ambiguous. We agree with the trial court and the Tax Court that the term is unambiguous and, as pointed out in *Bouse v. Hutzler,* 180 Md. 682, 687 (1942), apropos of appellants' prior administrative practice argument:

> "No custom, however long and generally it has been followed by officials, can nullify the plain meaning and purposes of a statute."

Although appellants found several cases construing the word "filed" as used in other contexts, we find nothing directly supportive of the ambiguity argument, let alone their interpretive connotation. Their attempts to introduce meanings into other sections (*e.g.,* § 141 (b)), and to read those meanings into the sections at issue, are so strained as to warrant little comment. It will suffice to say that their interpretation of the purpose and meaning of these sections is in error.

Dictionaries (both legal and lay) and Maryland case law, including interpretation of our own rules,[3] clearly indicate that, in the sense that it was used in the statutes at issue prior to the 1979 amendment, the term "filed" means "delivered." *Levy v. Glens Falls Indem. Co.,* 210 Md. 265, 273 (1956), appears to have derived its historical analysis from *Black's Law Dictionary* when it said that:

> "The word 'file' is derived from the ancient custom of filing or fastening writs and other exhibits on a wire or thread in courts and offices for safekeeping and ready reference. Thus a paper is said to be 'filed' when it is delivered to the proper officer and received by him to be kept on file. In modern usage, the 'filing' of a paper consists in placing it in the custody of the proper official who makes the proper indorsement thereon. The word 'filed' carries with it the idea of permanent preservation of a paper so delivered and received, so that it may become a part of the public record."

As recently as 1980, we note that one of the few issues in which the Court of Appeals in *Hirsch v. Md. Dep't of Nat. Resources,* 288 Md. 95 (1980), agreed with our opinion in *Maryland Dep't v. Hirsch,* 42 Md. App. 457 (1979), was what was meant by the term "filed". We have no hesitancy in affirming the judgment of the circuit court on the law. W are sympathetic with appellants' plight, but, unfortunately, to do more is not within our discretion, or even our jurisdiction.

*Judgment affirmed.*
*Costs to be paid by appellants.*

---

3. In Renehan v. Public Serv. Comm., 231 Md. 59, 63 (1963), the Court of Appeals addressed a precise circumstance, holding that:

"The mailing of the appeal to the Clerk is not made the equivalent of filing it with him."