486 A.2d 218

**WOODMONT COUNTRY CLUB, INC.**

v.

**MONTGOMERY COUNTY, Maryland, et al.**

**No. 376, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Jan. 8, 1985.

Arthur H. Blitz, Bethesda (Goldstein, Blitz & Rosenberg, P.A., Bethesda, on brief), for appellant.

H. Christopher Malone, Senior Asst. County Atty. (Paul A. McGuckian, County Atty. and Robert G. Robin, Jr., Deputy County Atty., Rockville, on brief), for appellee, Montgomery County.

Paul T. Glasgow, City Atty., Rockville, for appellee, Mayor and Council of Rockville.

Stephen H. Sachs, Atty. Gen., Kaye Brooks Bushel and David M. Tralins, Asst. Attys. Gen., Baltimore, on brief, for appellee, Supervisor or Assessments for Montgomery County.

Argued before BISHOP, ALPERT and KARWACKI, JJ.

KARWACKI, Judge.

The narrow issue presented for our determination in this appeal is the proper construction of Md.Code (1957, 1980 Repl.Vol.), Art. 81, § 19(e),[1] which permits preferential treatment of country club use property in the assessment and taxation of real property. The pertinent subsections of that statute provide:

(2) Pursuant to such agreement or any extention [sic] thereof with the State Department of Assessments and Taxation, land which is actively devoted to use as a country club as defined herein shall be assessed on the basis of such use for the period of time provided for in the agreement or any extension thereof and shall not be assessed as if subdivided or used for any other purpose, except in accordance with subparagraph (3) hereof.

(3) Whenever any land assessed according to subparagraph (2) hereof has an assessable value greater than its assessable value as land devoted to use as a country club, such land shall also be assessed on the basis of such greater value, provided however, that no taxes shall be

---

1. We hereinafter refer to this section of the Code simply as § 19(e).

due and payable upon such greater assessment except pursuant to the provisions of subparagraph (7) hereof.

. . . . .

(7) If, prior to the expiration of the agreement, or any extension thereof, part or all of the property is conveyed to a new owner, or said property ceases to be used as, or fails to qualify as, a country club, as defined herein, then at such time as part or all of such property is conveyed, or at such time as said property ceases to be used as, or fails to qualify as, a country club, whichever is the earlier date, the unpaid taxes, calculated at the tax rates applicable for the particular year or years involved, upon the difference between the assessment or assessments made pursuant to subparagraph (2) and the assessment or assessments made pursuant to subparagraph (3) hereof, for the taxable years included in the following time period shall immediately become due and payable:

(A) The period from and including the taxable year which such land was first assessed pursuant to paragraphs (2) and (3) hereof, to the end of the taxable year in which any of the contingencies specified in this subparagraph occurs, provided however, that any such deferred tax shall be payable for a period of no longer than ten years.

(B) If, within ten (10) years after the expiration of the agreement, or any extension thereof, part or all of the property is conveyed to a new owner, then at such time as part or all of such property is conveyed, deferred taxes shall be immediately due and payable and shall be calculated based upon the assessed value made pursuant to subparagraph (3) hereof, for so many of the most recent taxable years as necessary to achieve a tax based on the full value of said land for ten (10) taxable years.

Woodmont Country Club, Inc., (hereinafter "Woodmont") operates a country club on Rockville Pike in Montgomery County, Maryland. As the owner of real property, Woodmont is subject to having that property assessed by the

State of Maryland and taxes levied thereon by both Montgomery County and the City of Rockville. In December, 1965, and in accordance with then recently enacted § 19(e), Woodmont entered into an agreement with the State Department of Assessments and Taxation (hereinafter SDAT). Pursuant to that agreement, Woodmont's real estate actively devoted to country club use would be assessed and taxed as country club property rather than as comparable real estate used for more intensive purposes.

Paragraph IV of that agreement reflected subsection (e)(5) of § 19 and provided that "... this agreement shall be for a period of not less than ten consecutive years and may be extended from time to time..." Although the agreement did not clearly identify the period of time during which it was in effect, the parties treated the agreement as being effective for a ten year period. The agreement recognized that Woodmont would owe deferred taxes under § 19(e)(7) on any portion of the property which ceased to be used for country club purposes, irrespective of the term of the agreement.

On July 10, 1975, the Supervisor of Assessments for SDAT advised Woodmont that the initial agreement would expire at the end of 1975, and that in order to permit the property to continue to be assessed and taxed on its use as a country club, another agreement must be executed. Thereafter, on September 2, 1975, a second agreement was executed between SDAT and Woodmont. Again, the agreement did not specify the period of time during which it was to have effect, but the parties understood that this agreement was also for a ten year period. In other respects as well, the second agreement was virtually identical to the original agreement.

At some time prior to April, 1981, Woodmont entered into contracts to sell a portion of its land, a 4.94 acre parcel to Hines Industrial Limited and an 8.66 acre parcel to Rockmont Associates. Under the agreements entered into by Woodmont and SDAT, pursuant to § 19(e), both of these

parcels had enjoyed preferential tax treatment as devoted to country club use. The 4.94 acre parcel was so assessed and taxed from 1969 through 1980; the larger parcel was similarly treated for the tax years 1966 through 1980. By letter dated April 22, 1981, the Supervisor of Assessments for Montgomery County notified the County's Division of Revenue of Woodmont's intended conveyances for non-preferential use. The letter set forth the supervisor's calculation of the taxes due under § 19(e)(7) based upon taxable years 1971 through 1980.

Thereafter, the County's Division of Revenue notified Woodmont by letter dated May 4, 1981, that the amount of deferred real property taxes then due would be $169,654.44 on the 4.94 acre parcel and $12,680.57 on the 8.66 acre parcel for a total tax assessment of $182,335.01. This amount represented deferred taxes for the most recent ten taxable years prior to the 1981 conveyances. Woodmont paid the sum under protest on or about May 15, 1981, immediately following the May 14, 1981, conveyances of the two parcels. In a letter dated April 6, 1982, addressed to the County's Director of Finance, Woodmont requested a refund of the taxes paid under protest, arguing that the taxes should have been calculated upon the tax years 1966 through 1975, rather than the tax years 1971 through 1980.[2]

The refund request was denied, and Woodmont appealed to the Maryland Tax Court. The Tax Court affirmed the action of the final assessing authority denying Woodmont's claim for a refund. Woodmont then appealed to the Circuit Court for Montgomery County. When Judge John F. McAuliffe filed his opinion and order affirming the decision of the Tax Court, this appeal followed.

The General Assembly in promulgating § 19(e) created a system under which land devoted to country club use may be assessed and taxed on the basis of such use. Under that

---

2. On April 10, 1982, Woodmont paid $10,520.87 in deferred taxes owed for tax years 1971 through 1975, under either of the conflicting constructions of the statute.

system, the country club and the State enter into an agreement providing for the country club use assessment for a term of years, which may not be less than ten consecutive years and may be extended in increments of not less than five years. Sections 19(e)(1)(5) and (14). The payment of property taxes on the full value assessment is deferred until one of three contingencies occurs: the land is either conveyed to a new owner; it ceases to be used for country club purposes, or it fails to qualify for the country club assessment. Sections 19(e)(3) and (7). Upon the occurrence of any one of these three events, the unpaid deferred taxes become immediately due and payable on the difference between the country club assessment and the full cash value assessment at the tax rate for each applicable year, not to exceed ten taxable years. Section 19(e)(7).

The instant dispute centers upon which ten year period should be used in calculating the assessment of taxes due under § 19(e)(7). Woodmont asserts that it should pay deferred taxes calculated upon the first ten years of preferential assessment, in this case 1966 through 1975, without regard to when the land was conveyed. However, both the Maryland Tax Court and the Circuit Court agreed with the taxing authorities that § 19(e)(7)(A) requires that the most recent ten years prior to the 1981 conveyances should be used in calculating the amount of deferred taxes due.

We note preliminarily that we are in accord with the parties in concluding that § 19(e)(7)(B) is inapplicable under the instant circumstances. That subsection applies to those situations in which country club use property is conveyed within ten years *after* the expiration of an agreement, or any extension thereof. In this case, the 1975 agreement between Woodmont and the State was in effect at the time of the 1981 conveyances. Therefore, § 19(e)(7)(A) governs the treatment of the deferred tax due and payable upon the conveyances.

Section 19(e)(7)(A) is ambiguous when applied to situations like the one presented here; *i.e.*, a conveyance of two

parcels of country club use property in the 12th and 15th years of the country club use assessment under a 10 year agreement which was extended or superseded by a new 10 year agreement. The ambiguity results because the Legislature, in limiting the amount of deferred taxes which can be recaptured to 10 years, did not expressly prescribe the method by which the 10 year period is to be determined. Therefore, it is incumbent upon the courts to construe the statute and to identify the applicable time period.

 Under the cardinal rule of statutory construction we must ascertain the intention of the Legislature and carry out that intention. *Board of County Commissioners v. Stephans*, 286 Md. 384, 408 A.2d 1017 (1979). In ascertaining and effectuating the legislative intent, the statute's legislative history, administrative interpretations, purpose, and its language taken in context and in relation to all its provisions must be considered. *Department of State Planning v. Hagerstown*, 288 Md. 9, 14, 415 A.2d 296 (1980). If the words used in the statute are of doubtful meaning, the court in determining the legislative intent will not only consider their usual and literal meaning, "but their meaning and effect considered in the light of the objectives and purposes of the enactment and the consequences resulting from one meaning rather than another meaning...." *Truitt v. Board of Public Works*, 243 Md. 375, 394, 221 A.2d 370 (1966). Statutes should be construed reasonably and with reference to the purposes to be accomplished. *Howard Co. Ass'n. for Retarded Citizens v. Walls*, 288 Md. 526, 530, 418 A.2d 1210 (1980). Statutory construction which leads to results that are unreasonable, illogical or inconsistent with common sense is to be avoided. *Cider Barrel Mobile Home Court v. Baker*, 287 Md. 571, 584, 414 A.2d 1246 (1980).

 The preamble to the bill which proposed the enactment of § 19(e) stated in pertinent part:

WHEREAS, It is the intent of the General Assembly that the assessment of lands used for country clubs shall

be maintained at levels compatible with the continued use of such property for country clubs and shall not be adversely affected by neighboring uses of a more intensive and different nature; and

WHEREAS, The General Assembly hereby declares it to be in the general public interest that such uses should be encouraged in order to provide open spaces and provide recreational facilities and to prevent the forced conversion of such country clubs to more intensive or different uses as a result of economic pressures caused by the assessment of country club land and improvements at a rate or level compatible with the practical use of such property for country clubs.

Ch. 399 of the Acts of 1965. From the foregoing, it is evident that the Legislature sought to achieve two goals in enacting this legislation: 1) to encourage the use of land by country clubs as a means of retaining open spaces and providing recreational facilities; and, 2) to prevent the forced conversion of such lands to a different and more intensive use. However, in seeking to address these worthy goals, the Legislature has in enacting § 19(e), given an economic boon to the country clubs who make use of the preferential tax treatment this statute affords them.

Under the construction of § 19(e)(7)(A) adopted by the lower court, both of the above mentioned legislative goals are satisfied. A greater incentive is provided to the country club to retain its country club use property by the deferral of a larger amount of tax generated during the most recent 10 taxable years prior to conveyance. This is true because historically there has been a rise in real property values, with a concomitant increase in taxes generated by the property. Under Woodmont's proposed construction of the statute this incentive is lost, since after the first 10 years the country club's tax liability upon conveyance of its property ,to a non-preferential use would remain constant, regardless of the year of conveyance. A construction of the statute which requires the use of the most recent 10

years rather than the initial 10 year period effectuates the above described legislative goals.

There exists additional support for a construction of § 19(e) that mandates the use of the most recent 10 years as a recapture base for the payment of deferred taxes. The Court of Appeals has held that similar preferential treatment accorded by § 19(b) to land devoted to agricultural use is essentially an exemption and must be strictly construed. *Warlick v. Supervisor of Assessments,* 272 Md. 540, 545, 325 A.2d 587 (1974). Such statutory exemptions are strictly construed in favor of the taxing authority and against the taxpayer. *Perdue v. State Department of Assessments and Taxation,* 264 Md. 228, 232–33, 286 A.2d 165 (1972). Just as any doubt as to an exemption must be resolved in favor of the taxing authority, any doubt concerning the amount of tax due in accordance with such preferential treatment must be resolved in favor of the taxing authority to collect the maximum amount of tax due the State in accordance with the legislative provisions. Therefore, § 19(e)(7)(A) must be construed so as to maximize the amount of tax to be collected upon cessation of the preferential treatment. Given the historic increase in real property values and taxes thereon, the construction of the statute which would maximize the amount of tax due the State is that which requires the most recent 10 taxable years as the recapture base.

Finally, we recognize that our construction of the statute must be one which is reasonable, logical and consistent with common sense. *See Cider Barrel Mobile Home v. Baker, supra.* Accordingly, that construction should not result in disparate treatment of taxpayers similarly situated. Thus a club which conveys country club use property during the term of an agreement authorized by § 19(e) should be treated identically to one that conveys such property shortly after an agreement expires. Under 19(e)(7)(B) the latter's liability for deferred taxes would expressly be based on the most recent 10 years of preferential treatment. The former should be treated consistently when applying 19(e)(7)(A).

This construction harmonizes the two subsections of the statute, and leads to a reasonable, fair and consistent result.

For all the reasons herein discussed, we conclude that the interpretation given to § 19(e)(7)(A) by the Maryland Tax Court and the Montgomery County Circuit Court is the one which best effectuates the intention of our General Assembly in promulgating § 19(e).

JUDGMENT AFFIRMED; COSTS TO BE PAID BY THE APPELLANT.