FEDERAL  INSURANCE  COMPANY ET AL. *v.*
ALLSTATE  INSURANCE  COMPANY ET AL.

[No. 234, September Term, 1974.]

*Decided July 8, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Delverne A. Dressel,* with whom were *Emanuel H. Horn* and *Dickerson, Nice, Sokol & Horn* and *Hal C. B. Clagett* and

*Sasscer, Clagett, Channing & Bucher* on the brief, for appellants.

*F. Gray Goudy* for Allstate Insurance Company and Market Insurance Company, part of appellees. *Samuel O. Jackson, Jr.,* with whom were *Max R. Israelson, Israelson, Pines & Jackson, P.A., Louis F. Friedman* and *Miles & Friedman* on the brief, for Sarah E. Allison, other appellee.

LEVINE, J., delivered the opinion of the Court.

This appeal arises primarily from a dispute between two automobile liability insurers over who should bear the initial brunt of several personal injury claims. A third insurance company is also embroiled, but its fortunes ride on the outcome of the main contest. The case commenced with an action for declaratory judgment filed in the Circuit Court for Prince George's County by appellants, Federal Insurance Company (Federal), and its named insured, Max Schwartz (Schwartz), against appellees, Allstate Insurance Company (Allstate), Market Insurance Company (Market), and a number of individuals whose identities will be developed during the course of this opinion.

The trial judge (Couch, J.) fastened responsibility on the insurance companies in this order: first, primary coverage on Allstate; next, Market for excess to the full extent of its policy limits; and finally, Federal to the extent that any judgments might exceed the combined limits of the Allstate and Market policies. On appeal, the Court of Special Appeals held in *Allstate Ins. Co. v. Federal Ins. Co.*, 23 Md. App. 105, 326 A. 2d 29 (1974), that the trial court had been substantially correct, but modified the priorities between the insurers. Because this case presents important questions pertaining to automobile liability insurance not previously decided by this Court, we granted a Writ of Certiorari.

In early January of 1972, Max Schwartz, a resident of Brooklyn, New York, was planning a winter vacation in Florida. Desiring to have his Cadillac automobile with him during his visit, he made arrangements to have it

transported by one of the appellees herein, Dominick Spinelli, trading as Direct Way Auto Shippers (Direct Way), a carrier authorized by the Interstate Commerce Commission (the I.C.C.) to engage in the business known in the motor carrier industry as a "driveaway service." Schwartz contacted Direct Way in response to an advertisement in the New York Times soliciting potential automobile shippers. For this service, Schwartz agreed to pay Direct Way the sum of $90 pursuant to the tariff which the latter had filed with the I.C.C.

The transaction was evidenced by a bill of lading in which Schwartz, as the shipper, "guarantee[d]" that his automobile was insured "for coverages of ten thousand to twenty thousand dollars for bodily injuries . . . ." In addition, he consented to have "*the* driver . . . transport persons *authorized by the carrier*, but not for hire." (emphasis added). The last provision is the only reference in the bill of lading to anyone but "the driver." Direct Way, as the carrier, agreed that it would "obtain and provide *a* licensed driver to drive the vehicle to the indicated destination." In addition to the bill of lading, Schwartz and Direct Way executed a "shipping order form & freight bill." At the very top is the inscription " 'Ship the *Fully Insured* Direct Way.' " Elsewhere, there appears the following: "Direct Way covers your automobile with *complete insurance protection.* This includes *public liability* . . . ." (all emphasis added). As with the bill of lading, all references to the driver are in the singular.

Simultaneously with the appearance of the advertisement in the New York Times, Direct Way was sponsoring a solicitation for automobile drivers in "The Village Voice," a publication aimed at young adults who might be interested in low-budget transportation to Florida.[1] Another of the appellees, Richard C. Frank (Frank), responded to this advertisement, and signified his wish to drive an automobile owned by one of Direct Way's customers to Florida. The

---

1. In the driveaway operation, the driver pays no charge except, of course, travel expenses. His compensation is in the form of free transportation.

"Driver Agreement And Instructions" which he signed also refers to the driver consistently in the singular, and does not make any mention of other persons, either as possible occupants or as operators of the automobile being transported.

On January 8, 1972, Schwartz's automobile was picked up at his home by a Direct Way employee who checked its condition before issuing the bill of lading.[2] The employee acknowledges that nothing was said to Schwartz about other persons, in addition to the "contract" driver, being in the car. Indeed, as we have indicated, he insists that these matters were not even discussed.

On January 10, Frank, unaccompanied by anyone else, took delivery of the Schwartz automobile from Direct Way's manager at the latter's residence. He was allotted four days in which to deliver the car to its Florida destination. There was never any discussion between him and any of the Direct Way personnel concerning the possible presence of other occupants — including additional drivers — in the automobile. This means that Direct Way neither granted Frank permission to have other drivers or passengers, nor prohibited him from doing so.

As it happened, Frank picked up his girl friend and James Straz (Straz), another appellee, immediately on obtaining possession of the automobile in accordance with plans that had been made several weeks before. Those prearrangements included an agreement to share travel expenses. The three then departed for Florida with Frank at the wheel. Near the southern end of the New Jersey Turnpike, he was relieved by Straz. While the latter was driving through Prince George's County on the Baltimore-Washington Parkway, the car apparently went out of control and crossed the median strip, resulting in a

---

2. In his testimony, which, like that of every other witness, was taken by deposition, Schwartz claims that when his automobile was picked up, the employee represented that there would be only one driver and no passengers. This is disputed by the employee, who denies that these matters were even discussed. Since this case was disposed of by summary judgment, and the trial judge correctly refrained from resolving that factual conflict, this testimony shall play no part in our decision.

four-car collision and a bevy of personal injury claims. The remaining appellees are persons making such claims.

On the date of the accident, Schwartz carried an automobile insurance policy with Federal, which included the Cadillac as an "owned automobile," specifying maximum limits of $100,000 for "each person" and $300,000 for "each occurrence." The policy contained a "persons insured" provision which, in relevant part, states:

> "The following are insured under Part I:
>> "(a) with respect to the owned automobile,
>>> "(1) the named insured and any resident of the same household,
>>> "(2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) nis other actual use thereof is *within the scope of such permission,* and
>>> "(3) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a) (1) or (2) above;" (emphasis added).

Elsewhere, the policy contains an "Other Insurance" clause which states:

> "If the insured has other insurance against a loss covered by Part I of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; . . . ."

At this same time, Direct Way held two insurance policies. The first, issued by Allstate, specifies maximum limits of liability in the sums of $50,000 for "Each Person" and $100,000 for "Each Occurrence." By its express terms, the policy was written in contemplation of Direct Way's

operation as an interstate motor carrier. This policy contains a "persons insured" provision which states in relevant part:

"Each of the following is an Insured under this insurance to the extent set forth below:

"(a) the Named insured;

"(b) any partner or executive officer thereof, but with respect to a non-owned automobile only while such automobile is being used in the business of the Named Insured;

"(c) any other person while using an owned automobile or a hired automobile with the permission of the Named Insured, provided his actual operation or (if he is not operating) his other actual use thereof is *within the scope of such permission* . . . .

"(d) any other person or organization but only with respect to his or its liability because of acts or omissions of an Insured under (a), (b) or (c) above.

"None of the following is an Insured:

\* \* \*

"(ii) the owner or lessee (of whom the Named Insured is a sub-lessee) of a hired automobile or *the owner of a non-owned automobile,* or any agent or employee of any such owner or lessee;" (emphasis added).

The Allstate policy also contains this clause:

"Excess Insurance — Hired and Non-Owned Automobiles

"With respect to a hired automobile or a non-owned automobile, this insurance shall be excess insurance over any other valid and collectible insurance to the Insured."

In addition to these provisions in the basic policy, Allstate issued an endorsement in compliance with I.C.C. regulations, which provides as follows:

"In consideration of the premium stated in the policy to which this endorsement is attached, the Company hereby agrees to pay, *within the limits of liability hereinafter provided,* any final judgment recovered against the insured for bodily injury to or death of any person, or loss of or damage to property of others . . . resulting from negligence in the operation, maintenance, or use of motor vehicles under certificate of public convenience and necessity or permit issued to the insured by the Interstate Commerce Commission, . . .

\* \* \*

*"Within the limits of liability hereinafter provided* it is further understood and agreed that *no condition, provision, stipulation, or limitation* contained in the policy, or any other endorsement thereon or violation thereof, or of this endorsement, by the insured, *shall relieve the Company* from liability hereunder . . . .

\* \* \*

"The Company shall not be liable for amounts in excess of the following for each accident: [$25,000 per person, $100,000 per accident] . . . ." (emphasis added).

In addition to the coverage afforded by Allstate, Direct Way held an "excess" policy with Market, which included the following language:

"In consideration of the payment of premium stated in the Declaration, the Company agrees to indemnify the Insured in accordance with the applicable insuring agreements of the Primary Insurance against loss subject to the limits stated in Item 5, Section I of the Declarations and as fully

and to all intents and purposes as though the Primary Insurance had been issued for the limits set forth in Item 5, Section III of the Declarations. This policy shall apply only to coverages for which an amount is indicated in Item 5, Section I and then only in excess of the corresponding amount as indicated in Item 5, Section II of the Declarations."

Although "Item 5" of the "Declarations" does not specify the applicable limits, a separate endorsement provides that the Market coverage should be "the difference between $500,000 as a result of any one occurrence, or in the aggregate, and [the underlying limits of the Allstate policy]." The endorsement concludes with this reference: "as set forth in [the policy] issued by the Allstate Insurance Company." Since it is written for the express purpose of affording excess coverage only, the Market policy does not contain an "other insurance" clause.

After Federal brought its declaratory judgment action in the circuit court, one of the injury claimants filed a motion for summary judgment. In ruling on that motion, the court held that all three of the insurance companies must extend coverage to Schwartz, Direct Way, Frank and Straz. In so holding, it fixed the following priorities in succession:

1) Allstate provides primary coverage to the limits of its policy.

2) Then Market affords coverage, as excess to the Allstate policy, to the full extent of its limits.

3) Federal, as excess over the combined limits of the Allstate and Market policies, is then liable to the full limits of its policy.

As we indicated earlier, the Court of Special Appeals affirmed the circuit court with respect to the coverages provided, but altered the priorities in the following manner:

1) Allstate provides coverage up to the limits of the I.C.C. endorsement, namely $25,000 each person, $100,000 each occurrence.

2) Then Federal affords coverage to the full extent of its policy limits.

3) Allstate, as an excess carrier, is then responsible to the full extent of its unused policy proceeds.

4) Market, as an excess carrier, is then held to the full extent of its policy.

On appeal to this Court, Federal contends that in light of the I.C.C. endorsement, Allstate's policy is primary to the full extent of its policy limits, and not merely to the extent of the endorsement. Consequently, Market's policy, which is in essence an endorsement on the Allstate policy providing excess coverage up to $500,000, follows immediately behind the Allstate policy. Finally, Federal claims that it provides excess insurance only after the limits under both the Allstate and Market policies have been exceeded.

Additionally, appellants argue that Federal's policy does not extend any coverage to Direct Way, Straz, or Frank, since the scope of the permission granted by Schwartz was exceeded when Straz took the wheel. Therefore, they conclude, the Federal policy applies only to the liability, if any, of Schwartz.

Predictably, Allstate counters each of these contentions. Furthermore, in its cross-appeal, Allstate maintains that its policy does not cover Schwartz, Frank or Straz, but applies only to the liability of Direct Way. It also insists that regardless of the I.C.C. endorsement, any coverage that it does supply is excess over that provided by Federal.

The personal injury claimants, happy with the result below, and desirous of keeping all the insurers in the case as to all parties who may be liable for negligence, agree in all aspects with the decision of the Court of Special Appeals.

(1)

Coverage Under The Allstate Policy

Since Direct Way is the named insured under the Allstate policy, it is manifestly an insured under section (a) of the "persons insured" provisions.

The critical question here is whether Straz and Frank also are insured under section (c) of the "persons insured" clause of the policy. Clearly, Direct Way, the named insured, gave permission to Frank to drive the car to Florida. There was, however, no express permission given Frank to carry passengers or to allow another person to drive the vehicle.

We have had several occasions to consider the effect of similar omnibus clauses in automobile insurance policies. In *Casualty Co. v. Mitnick*, 180 Md. 604, 26 A. 2d 393 (1942), the named insured had given permission to a Mrs. Phillips to use his automobile. At the time of the accident, she was riding in the car as a passenger while it was being driven by a friend. The Court concluded that Mrs. Phillips was an insured, since she was using the automobile, saying:

> ". . . It is argued that the words 'person using,' and 'use,' in the omnibus clause, refer to the actual driving of the car, not to taking the car out and controlling the trip while driven by another. But using a car in the ordinary acceptation of the words seems clearly to include a borrower's making use of it by riding while driven by another. Mrs. Phillips was 'still the director of the enterprise, still the custodian of the instrumentality confided to [her] keeping, still the master of the ship.' . . ." 180 Md. at 607 (brackets in original).

Similarly, in *Melvin v. American Auto. Ins. Co.*, 232 Md. 476, 478-79, 194 A. 2d 269 (1963), we said:

> "We see no reason to limit the meaning of the words 'actual use' to the operation of a vehicle, where the operator is the agent or servant of another and subject to his immediate and present direction and control. . . ."

Since Frank, the first permittee of Direct Way, was in the car while enroute to Florida at the time of the accident, it was still being used for the purpose for which it was given to Frank. Because Frank was the "custodian of the instrumentality confided" to him, it is clear under the

Maryland cases that he was using the automobile. Accordingly, Frank is an insured under the Allstate policy.

The question which we have not previously had occasion to consider is whether a second permittee is also an insured under an omnibus clause such as the one here on the grounds that he is using the automobile "with the permission of the named insured." Previous cases that have extended coverage to the second permittee were based on an omnibus clause naming, as an insured, any person "legally responsible" for the use of the automobile, provided the actual use was with the permission of the named insured. *See Melvin v. American Auto. Ins. Co., supra; Maryland Indem. Ins. v. Kornke*, 21 Md. App. 178, 319 A. 2d 603 (1974). In such cases, the second permittee was covered because, as the operator of the vehicle, he was "legally responsible" for the use, although the actual use was by the first permittee. The Allstate policy in question here does not contain such a phrase; consequently, the second permittee (Straz) is covered only if he was *using* the automobile with the implied permission of Direct Way.

In discussing this question, 7 Am. Jur.2d, *Automobile Insurance*, § 117 (1963), states:

> "The 'general rule' that a permittee may not allow a third party to 'use' the named insured's car has generally been held not to preclude recovery under the omnibus clause where (1) the original permittee is riding in the car with the second permittee at the time of the accident, or (2) the second permittee, in using the vehicle, is serving some purpose of the original permittee. The courts generally reason that under such circumstances the second permittee is 'operating' the car for the 'use' of the first permittee and that such 'use' is within the coverage of the omnibus clause. While some courts apparently would limit this qualification of the general rule to situations where the named insured has not specifically forbidden driving by a third person, it is more generally held that

operation by a third person under such circumstances falls within the protection of the omnibus clause even where such operation is specifically forbidden by the named insured."

*See Maryland Indem. Ins. v. Kornke, supra,* 21 Md. App. at 193; Annot., 4 A.L.R.3d 10, 57-58, and the cases cited therein.

In the present case, we need only hold that there was implied permission from Direct Way to Frank to subdelegate the driving to Straz, in light of these facts: the first permittee (Frank) was a passenger in the car and had control and direction of the car; subdelegation of permission to drive was not specifically forbidden; the second permittee (Straz) was serving some purpose of Frank; and both Straz and Frank, by driving the Schwartz vehicle to Florida, were serving a purpose of the named insured (Direct Way). Consequently, Straz is also an insured under the omnibus clause of the Allstate policy.

Because Straz and Frank are insureds under section (c) of the Allstate omnibus clause, Schwartz is also an insured under section (d) as a person liable because of the acts or omissions of an insured under section (c). Allstate argues that Schwartz is not an insured because of the provision excluding the owner of a "non-owned automobile." The short answer to this contention is that the owner exclusion is a general provision denying coverage to the owner of a car where his only claim to coverage is ownership; but such an owner is nonetheless capable of being an insured should he otherwise come within one of the specific inclusion clauses.

Where two clauses or parts of a written agreement are apparently in conflict, and one is general in character and the other is specific, the specific stipulation will take precedence over the general, and control it. *Lumber Co. v. Bldg. & Savings Assn.,* 176 Md. 403, 408, 5 A. 2d 458 (1939); *cf. Vickery v. Maryland Trust Co.,* 188 Md. 178, 188, 52 A. 2d 100 (1947); insurance policies, we have said, are to be construed in the same manner as any other contract, *Little v. First Federated Life,* 267 Md. 1, 5, 296 A. 2d 372 (1972); *Amer. Etc. Ins. Co. v. Fid. & Cas. Co.,* 159 Md. 631, 636, 152

A. 523 (1930); *see Watson v. U.S.F. & G. Co.*, 231 Md. 266, 271, 189 A. 2d 625 (1963). Thus, like other contracts, an insurance policy must be read as a single document, and is to be construed as a whole, *Mateer v. Reliance Ins. Co.*, 247 Md. 643, 648, 233 A. 2d 797 (1967); *Mutual Life Ins. Co. v. Hurst*, 174 Md. 596, 604, 199 A. 822 (1938); *Baltimore Contract., Inc. v. Circle Floor Co. of Wash., Inc.*, 318 F. Supp. 106, 110 (D. Md. 1970). Furthermore, Direct Way fully understood its shippers to be covered, as evidenced by the representations on its own shipping forms. That Allstate intended to cover such shippers is, in all events, clear from the entire insurance contract.

In sum, we are in agreement with both courts below that the Allstate policy extends coverage to Direct Way, Schwartz, Frank and Straz.

(2)

Coverage Under The Federal Policy

Although the Federal policy contains virtually the same omnibus clause as the Allstate policy, a different set of considerations applies here. Where coverage is extended by the omnibus clause only to persons using the vehicle "with the permission of the named insured" (or other designated person), coverage depends upon the scope of the permission granted, *Cohen v. Am. Home Assurance Co.*, 255 Md. 334, 348, 258 A. 2d 225 (1969); *Maryland Indem. Ins. v. Kornke, supra*, 21 Md. App. at 191; and in determining whether the use comes within the purview of the omnibus clause, one must examine the "total facts," *Cohen v. Am. Home Assurance Co., supra*, 255 Md. at 348; *Maryland Indem. Ins. v. Kornke, supra*, 21 Md. App. at 192.

Here, the most important fact in determining the scope of the permission granted by Schwartz is that he entered into a contract with Direct Way pursuant to authority granted to the latter by the I.C.C. to engage in the interstate transportation of passenger automobiles. Laws which subsist at the time and place of the making of a contract, as

well as those of the place where it is to be be performed, enter into and form a part of the contract as though they were expressly referred to or incorporated in its terms. *Downing Dev. Corp. v. Brazelton,* 253 Md. 390, 398, 252 A. 2d 849 (1969); *Denice v. Spotswood I. Quinby, Inc.,* 248 Md. 428, 433-34, 237 A. 2d 4 (1968) (Building Code); *Griffith v. Scheungrab,* 219 Md. 27, 146 A. 2d 864 (1958) (FHA regulations); *cf. National Indemnity v. Simmons,* 230 Md. 234, 239, 186 A. 2d 595 (1962); *Casualty Co. v. Hinds,* 180 Md. 676, 679-80, 26 A. 2d 761 (1942). This principle has been applied with equal force to insurance policy disputes in motor carrier cases. *Cf. American Fidelity & Cas. Co. v. Pennsylvania Cas. Co.,* 97 F. Supp. 965, 971 (E.D. Tenn. 1950), *aff'd,* 188 F. 2d 364 (6th Cir. 1951), *cert. denied,* 342 U. S. 860 (1951).

Therefore, Schwartz was justified in assuming that Direct Way would fully comply with the regulations promulgated by the I.C.C. When he granted permission in the bill of lading to Direct Way (the first permittee) to drive the automobile to Florida, the permission granted was a narrow one. It has been held that comprehensive permission is more readily to be assumed where the use of the car is for social or non-business purposes than where the usage of the car is for business purposes, *Wise v. Ohio Casualty Ins. Co.,* 96 F. Supp. 380, 383 (W.D. Ky. 1951), *aff'd,* 192 F. 2d 1022 (6th Cir. 1951); *Jordan v. Shelby Mut. Plate Glass & Casualty Co.,* 51 F. Supp. 240, 242 (W.D. Va. 1943), *aff'd,* 142 F. 2d 52, 56 (4th Cir. 1944); *Fireman's Fund Indem. Co. v. Freeport Insurance Co.,* 30 Ill.App.2d 69, 173 N.E.2d 543, 545 (1961); *see* Annot., 4 A.L.R.3d 10, 33; Annot., 5 A.L.R.2d 600, 602.

One of the regulations of the I.C.C. with which Direct Way was charged is 49 C.F.R. § 392.60, which provides in relevant part:

"Unless *specifically authorized in writing* to do so by the motor carrier under whose authority the motor vehicle is being operated, *no driver shall transport any person* or permit any person to be transported on any motor vehicle other than a bus.

When such authorization is issued, it shall state the name of the person to be transported, the points where the transportation is to begin and end, and the date upon which such authority expires. . . ." (emphasis added).

49 C.F.R. § 392.61 provides:

"Except in case of emergency, no driver shall permit a motor vehicle to which he is assigned *to be driven by any person not authorized* to drive such vehicle by the motor carrier in control thereof." (emphasis added).

Furthermore, when Direct Way was granted its operating authority, I.C.C. Commissioner Brown commented:

"In conducting the operation authorized herein using casual drivers, applicant will be faced with several problems in compelling driver compliance with the Motor Carrier Safety Regulations, 49 C.F.R. § 290 *et seq.*, particularly those prohibiting the transportation of *unauthorized persons* and prohibiting a driver from allowing an *unauthorized person to drive* the vehicle assigned to him. . . ." *Dominick Spinelli, Common Carrier Application* (August 30, 1968) 107 MCC 799, 809-10, No. MC 127957. (emphasis added).

Thus, while it is true that Schwartz granted Direct Way (the first permittee) authority to subdelegate the driving to an authorized driver, the scope of this authority must be considered in light of the I.C.C. regulations cited above. Nowhere did Direct Way, within the meaning of 49 C.F.R. §§ 392.60 and 392.61, authorize Frank "in writing" to carry passengers, or to permit another person to drive the vehicle. Consequently, although Direct Way's delegation of the driving to Frank (the second permittee) was authorized by Schwartz, the further delegation by Frank to Straz (the third permittee) exceeded the scope of the permission.

In sum, the automobile was entrusted to Direct Way

under a contract of carriage governed by I.C.C. rules and regulations; the car was being driven at the time of the accident by a third permittee without express permission from either the named insured or the first permittee; and such operation of the vehicle was in violation of the I.C.C. regulations. We conclude from these "total facts" that the use of the automobile exceeded the scope of the permission granted by Schwartz. *See Goodwin v. Home Indemnity Co.*, 255 Md. 364, 258 A. 2d 220 (1969); *Cohen v. Am. Home Assurance Co., supra; Am. Home Assur. Co. v. Erie Ins.*, 252 Md. 116, 248 A. 2d 887 (1969). To paraphrase slightly what Judge Smith said for the Court in *Cohen*:

> "When one considers the total circumstances here involved, the inevitable conclusion is that the use here made by [Frank, Straz, and Direct Way] was not within the scope of the permission granted and was not the particular use contemplated when the permission was granted." 255 Md. at 349.

It follows, therefore, that neither Frank nor Straz were covered under the omnibus clause of the Federal insurance policy. Moreover, since Frank and Straz were not insureds, neither was Direct Way. Coverage under the Federal policy, consequently, applies only to Schwartz, the named insured.

### (3)

### Coverage Under The Market Policy

As we indicated early on, in the excess policy which it issued, Market agreed to "indemnify the insured in accordance with the applicable insuring agreements of the Primary Insurance . . . as fully and to all intents and purposes as though the Primary Insurance had been issued for the limits set forth in [the Market policy]." It is clear, therefore, that the Market policy is an endorsement to, and forms a part of, the underlying Allstate policy. Since the Allstate policy extends coverage to Schwartz, Direct Way, Frank and Straz, the Market policy does so as well.

### (4)

### Priority Of Coverages

Since Schwartz, should he be found liable in the personal injury cases, is afforded coverage under both the Allstate and Federal policies, the question of which insurer is primary arises. As we noted earlier, the circuit court held that Allstate was bound to provide primary coverage to the limits of its policy. The Court of Special Appeals agreed with the initial priority, but modified part of the circuit court decision by restricting Allstate's primary coverage to the limits set forth in the I.C.C. endorsement. Thus, Allstate would re-enter the picture for the remainder of its policy limits only after the Federal policy limits had been exhausted. We agree not only with both courts respecting Allstate's primary coverage, but also with the Court of Special Appeals that Allstate's primary posture does not extend beyond the limits set by the I.C.C. endorsement.

The basic rule in Maryland is that where two or more "other insurance clauses" conflict, the courts resolve the problem of double coverage by attempting to reconcile the conflicting clauses. "This approach recognizes that the rights and liabilities of the different insurers involved should depend, as far as possible, upon the specific language of the policies." *Consol. Ins. Co. v. Bankers Ins. Co.*, 244 Md. 392, 396, 223 A. 2d 594 (1966); *Accord, Citizens Co. v. Allied Co.*, 217 Md. 494, 144 A. 2d 73 (1958); *Celina Mutual v. Citizens Casualty*, 194 Md. 236, 71 A. 2d 20, 21 A.L.R.2d 605 (1950).

Wholly apart from the I.C.C. endorsement, then, since the Allstate policy contains an "excess" clause and the Federal policy contains a pro-rata clause, the excess clause would normally control, thereby making Federal the primary insurer. *Consol. Ins. Co. v. Bankers Ins. Co., supra*, 244 Md. at 399-400; *Citizens Co. v. Allied Co., supra.* As both courts below agree, however, the I.C.C. endorsement changes this result.

Under that endorsement, Allstate agrees to pay "any final judgment recovered against the insured . . . ." This applies

irrespective of any "condition, provision, stipulation, or limitation contained in the policy" to the contrary. This endorsement has been held to override the "other insurance" excess clause, thereby rendering the insurance primary. *Hagans v. Glens Falls Insurance Company*, 465 F. 2d 1249 (10th Cir. 1972); *Argonaut Insurance Co. v. National Indemnity Co.*, 435 F. 2d 718 (10th Cir. 1971); *Aetna Casualty and Surety Company v. Arkin*, 365 F. Supp. 813 (N.D. Ill. 1973). In *Argonaut*, both insurance policies contained excess "other insurance" clauses. Since the Argonaut policy contained the I.C.C. endorsement, the excess clause did not apply. This rendered Argonaut the primary insurer to the full amount of the loss, $55,000, which was in excess of the $25,000 per person limit contained in the endorsement.

Similarly, in *Aetna*, where the shipper's policy was primary and the carrier's policy was excess, the court held that the I.C.C. endorsement overrode the excess clause in the carrier's policy, thereby rendering the two companies primary co-insurers. In *Hagans*, the specific "other insurance" clauses were not considered. The court simply held that the I.C.C endorsement made the carrier's coverage primary.

The holding of both courts below that the effect of the I.C.C. endorsement is to subject Allstate to primary coverage is, we think, eminently sound. As Judge Gilbert reasoned for the Court of Special Appeals:

> "Under Allstate's theory of the coverage afforded by its policy, the only exposure to which it would ever be subjected, insofar as transporting vehicles of another is concerned, would be that of an excess carrier. It would never provide primary coverage because it would always be in a position to contend successfully that the vehicle was insured by another company even though it was being transported by Allstate's insured. . . . In our view the intent of Congress and the ICC was that the insurance company which wrote the ICC

endorsement would be responsible for primary coverage, both as a matter of law and of public policy. . . ." 23 Md. App. at 118-19.

The contention advanced by Allstate that the I.C.C. endorsement applies only to Direct Way, the named insured, is answered by noting that under the language of the endorsement itself, Allstate agrees to pay "any final judgment recovered against the *insured* . . ." (emphasis added). Since the endorsement applies to the "insured" and not to the "named insured," this includes all insureds within the contemplation of the basic Allstate policy.

We agree, moreover, with the Court of Special Appeals that by its express terms, the I.C.C. endorsement — without which, under our prior cases, Allstate would not occupy a primary position at all — is restricted in its effect to "the limits of liability" therein specified: $25,000 (rather than $50,000) for injury to or death of one person; and $100,000 for any one accident.

The only authority advanced by Schwartz and Federal for their contention that Allstate should be the primary insurer to the full extent of its policy limits is the bald reference in *Argonaut* to the payment there by the primary insurer of the $55,000 death claim. Given no further explanation or rationale for this argument, we are of the view that the clear language of the I.C.C. endorsement restricting Allstate's coverage thereunder to specified limits must prevail.

To summarize, these coverages apply in succession. With respect to Direct Way, Frank and Straz:

1) Allstate is the primary insurer, there being no "other insurance," to the full extent of its policy limits.

2) Market provides excess coverage to the full extent of its policy limits.

3) Federal affords no coverage.

With respect to Schwartz:

1) Allstate is the primary insurer to the extent of the limits specified in its I.C.C. endorsement.

2) Federal affords coverage to the full extent of its policy limits.

3) Allstate then re-enters as an excess carrier to the full extent of its policy limits, less payment already made under the I.C.C. endorsement.

4) Market is then responsible to the extent of its policy limits for all settlements or judgments exceeding the combined limits of the Federal and Allstate policies.

> *Judgment modified as set forth herein; as so modified, affirmed; costs to be paid two-thirds by Allstate Insurance Company and Market Insurance Company, one-third by Federal Insurance Company.*