657 A.2d 1183

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**

v.

**MARTIN MARIETTA CORPORATION, et al.**

**No. 809, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

March 29, 1995.

Reconsideration Denied May 30, 1995.

Joseph N. Karey (Mark R. Brown and O'Doherty, Nead, Hoffman & Karey, on the brief), Baltimore, for appellant.

Philip B. Barnes (Catherine W. Steiner and Whiteford, Taylor & Preston, L.L.P., on the brief), Towson, for appellees.

Argued before FISCHER, CATHELL and MURPHY, JJ.

MURPHY, Judge.

In this "coverage question" appeal from the Circuit Court for Baltimore City, the parties have presented three questions for our review. State Farm Mutual Automobile Insurance Company ("State Farm"), appellant, asks:

I. Was the evidence presented sufficient to allow the jury to decide the issue of permissive use?

II. Did the trial court improperly overturn the verdict of the jury when it granted defendant/appellee's motion for judgment notwithstanding the verdict?

Martin Marietta Corporation ("Martin") and Franklin P. Racey ("Racey"), appellees, ask:

Did the trial court properly grant defendants' motion for judgment notwithstanding the verdict where there was no legally relevant competent evidence from which a rational mind could infer the existence of permission to use the vehicle at the time of the accident?

We answer "yes" to State Farm's questions, and shall explain why appellees' question is based on an incorrect analysis of the evidence, which was sufficient to establish the driver's permissive use.

## *BACKGROUND*

Appellant provided uninsured motorist coverage to James R. Johnson, who was injured in an accident caused by the negligence of David Lee Mansel, Sr. while Mansel was driving an automobile that had been leased by Martin. Martin and its liability carrier claimed that Mansel was driving without permission when the accident occurred. Appellant claimed that Mansel was insured under Martin's liability policy. Johnson filed a complaint for declaratory judgment to determine which company would be obligated to compensate him for his damages.

The following stipulation was read to the jury:

The parties have agreed to the following facts for the purpose of this case. On December 18, 1988, plaintiff, James R. Johnson, was operating his 1980 Toyota Celica northbound on Hillen Road, Baltimore City. On December 18, 1988, defendant David Lee Mansel, Sr. was operating a 1988 Chevrolet Caprice westbound on Northern Parkway, Baltimore City.

On December 18, 1988, Mr. Johnson and Mr. Mansel were involved in a motor vehicle accident. On December 18, 1988, Franklin P. Racey was an employee of Martin Marietta Corporation. On December 18, 1988, the Chevrolet Caprice was leased by Martin Marietta Corporation. Marin (sic), Marietta Corporation assigned the 1988 Chevrolet Caprice to its employee, Franklin P. Racey.

On December 18, 1988, Defendant Martin Marietta Corporation maintained automobile liability insurance on the 1988 Chevrolet Caprice. On December 18, 1988, David Lee Mansel, Sr. did not have an automobile liability insurance policy in his name, which would provide coverage for his operation of a motor vehicle.

On December 18, 1988, plaintiff James R. Johnson had an automobile insurance policy with State Farm Mutual Automobile Insurance Company which provided Uninsured Motorist coverage.

These facts have been agreed to by all parties and by counsel.

Mr. Racey testified that, at the time of the accident, Mansel should not have been driving the vehicle at the location where the accident occurred. His testimony included the following questions and answers:

Q Can you tell the ladies and gentlemen of the jury how Mr. Mansel came into possession of your company car on December 18th, 1988?

A ... I was running late, and I didn't have time to get a cab, and I just called Dave and asked him if he would, you know, run me to the airport because I didn't want to leave my car there for a week, and he said, yes, and about, I don't know, 15 minutes later, I went up to his apartment or I went up to see if he was ready and then came back and then drove up, and drove to the airport, and why, I don't know, but I just remember as distinctly of saying, Dave, you know, take the car, park it and hang up the keys, and I left, as I was getting out and that's how it all started.

Q Do you remember any other conversation that you had on the way to the airport that day?

A Not really; we talked about a lot of things, and really not particularly anything.

\* \* \* \* \* \*

Q Was it your understanding that you could allow anyone else over the age of 25 to drive the Martin Marietta vehicle for any reason?

A No.

Q Fine. I am going to refer you to Page 48 of your deposition, specifically line 6, where I asked the question, "And was it also your understanding that you could allow anyone else over the age of 25 to drive that vehicle for any reason?"

Your answer: "Yes, because nobody ever told me I could not. The only stipulation was that if you drove the company vehicle, other than at work, then you supplied, you know, the gas."

Does that refresh your recollection?

A Yes. And I was speaking of myself.

The jurors also received evidence that Mansel has never been charged with unauthorized use of the vehicle, proscribed by Md.Code art. 27, § 349. Both Mansel and Racey acknowledged that Mansel had borrowed money from Racey on several occasions, and Racey had never made any demand for reimbursement. Mr. Mansel's testimony included the following questions and answers:

Q Did you tell Mr. Racey that night, December 18th, that you did not have use of either of your vehicles or words to that effect?

A Yes.

Q Now, on the way to the airport that night, December 18th of '88, did Mr. Racey tell you anything about using the car or not using the car after he went away?

A No, sir.

Q Mr. Racey didn't say, Dave, after you drop me off, I want you to take this car back to the apartment complex, park it and do not use it further. Did he say that?

A To the best of my knowledge, he didn't say that. If he did, I didn't hear him.

Q Well, he had never said anything like that before, did he.

A No, sir.

Q Was there any discussion with Frank Racey on that evening before the accident regarding gasoline?

A To the best of my knowledge, he gave me $10.00 to purchase gasoline, so there would be enough gasoline in the vehicle to pick him back up.

＊ ＊ ＊ ＊ ＊ ＊

Q Would you have taken Mr. Racey's car or Martin Marietta's car if he had told you not to?

A No, I wouldn't.

＊ ＊ ＊ ＊ ＊ ＊

Q Okay. Do you remember testifying in your deposition on July 1st, 1992, and I'm specifically referring to page 85, starting at line 8 and ending at line 14. Do you remember me asking the question:

"Well, did Mr. Racey ever tell you that he later found out what the company policy was as to the use of the vehicle?"

Your answer was: "Yes."

The next question: "What did he tell you in that regard?"

Your answer was: "That he never signed any statements saying that anyone couldn't drive the car. The only thing that he was aware of was that the person had to be over 25 years old."

A Yes. I believe that was discussed after that.

Q So you remember making those statements at the deposition?

A Yes.

Q And you remember Mr. Racey telling you that?

A Yes, sir.

Before final arguments, the jurors received the following instruction:

Now, this case is being submitted to you on one written question. You have to decide one factual issue. That is, at the time of the accident, did Mr. Mansel have the permission of Mr. Racey to drive the motor vehicle. Was he

driving that car with permission. And the written question will ask that and you will answer that yes or no.

We all understand what permission means. And the question is, did Mr. Mansel have Mr. Racey's permission at the time of the accident.

Permission can be shown to be express or implied. It's either—and I'm speaking hypothetically—it can be express, you have my permission to drive the automobile. That would be express permission. Or it can be implied permission. And implied permission would come from evidence of a course of conduct among those involved which would indicate that even though no express permission had been given, by the conduct you could conclude that it was an implied permission.

Well, the question which will be submitted to you, and I'll read it exactly now. "Did Defendant Mansel have permission of Defendant Racey to drive the automobile at the time of the accident," and the question is, I mean the answer is, "Yes" or "No".

The jurors answered "yes." We hold that the evidence was sufficient to support that answer.

### DISCUSSION

██ Mansel would not be covered under Martin's liability insurance if, at the time of the accident, he was operating the vehicle in a place or for a purpose outside of the permission given by Racey. There is, however, a presumption that Mansel did have permission to be driving at that time.[1] As soon as the stipulation was read to the jury, appellant had the benefit of this presumption, which shifted to appellees the burden of persuading the jury that Mansel did not have permission to be driving when the accident occurred. McLain, *Maryland Evidence*, § 301.3 (1987).

---

1. Even where this presumption is contained in a statute, it has been described as a "common law presumption." *Fout v. Deitz*, 401 Mich. 403, 258 N.W.2d 53, 54 (1977); *Tomack v. United States*, 369 F.2d 350, 352 (2nd Cir.1966).

We were told during argument that, in the "underlying case" of *Johnson v. Mansel, et al.,* Johnson's complaint alleged that Mansel was Martin's agent, and summary judgment was entered in favor of Martin on that issue. That ruling was obviously correct. *Grier v. Rosenberg,* 213 Md. 248, 254, 131 A.2d 737 (1957), *State, Use of Shipley v. Walker,* 230 Md. 133, 136–137, 186 A.2d 472 (1962). Proof that Mansel was not Martin's agent, however, does not resolve the issue of whether Mansel was a permissive user of Martin's vehicle.[2]

It is true that there is a distinction between the driver who is an agent and the driver who is a permissive user. See, *e.g., State, Use of Shipley v. Walker, supra,* 230 Md. at 137, 186 A.2d 472 (1962). It is also true that, at common law, when the presumption of agency has been rebutted, the owner of a vehicle is not liable for the driver's negligence. Our holding in this case does not change that rule. We merely recognize the fact that most drivers are permissive users. In the overwhelming majority of cases in which the complaint has alleged that the driver was acting as an agent for the owner, but no such relationship existed, summary judgment is entered in favor of the owner on the basis of the owner's affidavit that the driver was a permissive user rather than an agent. Rare are the cases in which the owner asserts that the driver was neither an agent nor a permissive user.

The owner who asserts that the driver was not an agent has the burden of production and the burden of persuasion on that issue. *Phillips v. Cook,* 239 Md. 215, 221–222, 210 A.2d 743 (1965). In *Phillips,* the Court of Appeals rejected a challenge to jury instructions that assigned to the defendant-partnership the burden of proving that its automobile was not being operated on partnership business when an accident occurred. The trial judge instructed the jury that, because the defendant admitted owning the vehicle, "it becomes the

---

2. It is of no consequence that Martin had "leased" the vehicle rather than "owned" it. The presumption of permission applies to the person or organization that has the authority to grant, deny, or limit permission to drive the vehicle.

duty of the defendant ... to go forward with the evidence to establish to your satisfaction by a fair preponderance of the evidence that the car was not at that time being operated on partnership business." *Id.* at 222, 210 A.2d 743. Judge Marbury explained why the instruction was correct:

> ... It is the established law in Maryland that the legal presumption arising from the ownership of a motor vehicle places the burden of overcoming the presumption on the owner. We see no difference between a master and servant situation and one involving a partnership. We have held that in a collision caused by an automobile operated by the servant of the owner, there is a reasonable presumption that the servant was acting in the scope of his employment and upon the business of his master, and the burden of overcoming this presumption is upon the master by showing that the servant was employed in business other than his employer's. *Grier v. Rosenberg,* 213 Md. 248, 131 A.2d 737; *Erdman v. Horkheimer & Co.,* 169 Md. 204, 181 Atl. 221; *Jordan Stabler v. Tankersly,* 146 Md. 454, 126 Atl. 65. Here, where it was shown that a vehicle was owned by the partnership for resale and operated by one of the partners at the time of the accident, there arose the presumption that the car was upon partnership business. It was incumbent at that time for the defendants to show otherwise.

239 Md. at 222, 210 A.2d 743.

We see no reason to apply a different rule when the owner denies permission rather than agency. The owner who asserts that the driver did not have permission should be held to the same burdens of production and persuasion as the owner who asserts that the driver was not an agent. The jury in this case should have been instructed to answer "yes" unless persuaded by a preponderance of the evidence that Mansel did not have permission.[3]

---

**3.** Md. Rule 5–301 was not in effect when this case was submitted to the jury. Application of that rule, however, would not result in a different instruction.

Appellees contend that, once the presumption of agency has been rebutted, the presumption of permission has been rebutted as well. We disagree. Maryland has a well established legislative policy designed to protect the public by assuring that persons who have been injured in automobile accidents are compensated by the parties who are responsible for the negligent operation of a motor vehicle. *Pennsylvania Nat'l Mut. v. Gartelman*, 288 Md. 151, 154, 416 A.2d 734 (1980). The presumption of permission is consistent with that policy. Moreover, the reason for the presumption of agency

is that common experience and observation demonstrates (sic) that in a large majority of cases automobiles are

---

As the Committee note makes clear, Rule 5–301 does not take an all or nothing approach to presumptions. The rule recognizes that it would be unwise to transform every evidentiary presumption into either a "Thayer–Wigmore bursting bubble" presumption (that becomes a permitted inference once the trier of fact receives evidence that the presumed fact is untrue) or a "Morgan–Type" presumption that shifts both the burden of production and the burden of persuasion. There are good reasons why the "Thayer–Wigmore" presumption of mailing should turn into a permitted inference when the person to whom the letter was allegedly mailed denies that it was received. *Bock v. Insurance Comm'r*, 84 Md.App. 724, 733–734, 581 A.2d 857 (1990). There are good reasons why the grantee who enjoyed a confidential relationship with the grantor should be required to overcome the "Morgan–Type" presumption that arises out of such a relationship, and to prove by clear and convincing evidence that there had been no fraud or undue influence. *Mattingly v. Mattingly*, 92 Md.App. 248, 263, 607 A.2d 575 (1992).

Rule 5–301(a) is not concerned with the issue of what should be said to the jury once the trial judge determines that the evidence offered to rebut a presumption is sufficient to generate a jury issue. The precise instruction will depend on whether the presumption merely shifts the burden of production or shifts both the burden of production and the burden of persuasion.

Had Rule 5–301 been applied in this case, the trial court would conclude that (1) appellees had introduced evidence that was legally sufficient to disprove the presumption of permission, but (2) such evidence was not so conclusive that the presumption was rebutted as a matter of law, so (3) whether Mansel had permission was a question for the jury. The trial court would then conclude that the presumption of permission is a "Morgan–Type" presumption that shifts both the burden of production and the burden of persuasion, and would therefore instruct the jury to find that permission existed unless persuaded by a preponderance of the evidence that Mansel did not have permission to be driving when the accident occurred.

operated by the owners thereof, or their servants and agents, and that, in the cases where this is not true, the knowledge of its untruth, and the ability to show the true state of facts, are peculiarly within the possession of the owner. In this state, up to the present time, this presumption has been held to be rebuttable, and the evidence offered in rebuttal may be so uncontradicted and conclusive as to entitle the court to say as a matter of law that it has been rebutted. On the other hand, the evidence as to agency may be conflicting, and in such case would present a question for decision by a jury ... In *Sherman & Redfield on Negligence,* 6th Ed., vol. 1, sec. 158, it is stated: 'When the plaintiff has suffered injury from the negligent management of a vehicle, such as a boat, car or carriage, it is sufficient *prima facie* evidence that the negligence was imputable to the defendant to show that he was the owner of the thing, without proving affirmatively that the person in charge was the defendant's servant. It lies with the defendant to show that the person in charge was not his servant, leaving him to show, if he can, that the accident was occasioned by the fault of a stranger, an independent contractor, or other person, for whose negligence the owner would not be answerable.' See also *Berry on Automobiles,* 6th Ed., p. 1126, sec. 1358.

*Penna. R. Co. v. Lord,* 159 Md. 518 at 526–527, 151 A. 400 (1930). That reasoning applies with even greater force to the presumption of permission. McLain, *supra,* § 301.3 at p. 205.

 The presumption of agency is rebutted as a matter of law only if the evidence is conclusive. *Campfield v. Crowther,* 252 Md. 88, 96, 249 A.2d 168 (1969). We hold that the same test should be applied to the presumption of permission. Appellees' burden of production on the permissive use issue was satisfied by Racey's testimony that he had placed geographic and purpose limitations on Mansel's permission. That

testimony was not, however, so conclusive that the presumption was rebutted as a matter of law.

The trier of fact is "free to accept that evidence which it believed and reject that which it did not." *Muir v. State,* 64 Md.App. 648, 654, 498 A.2d 666 (1985), *aff'd.* 308 Md. 208, 517 A.2d 1105 (1986). In this case, the jury could have found that Mansel had not been permitted to drive the vehicle anywhere other than to and from the airport. The jury was, however, entitled to reject appellees' evidence. In light of the presumption that Mansel did have permission to be driving when the accident occurred, the jury verdict should not have been disturbed. Appellant was entitled to a judgment in its favor.

**JUDGMENT REVERSED; APPELLEES TO PAY THE COSTS.**