<u>UNPUBLISHED</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-1132

HARLEYSVILLE MUTUAL INSURANCE COMPANY,

Plaintiff - Appellant,

v.

JENNIE BRIDGETT DAVIS; MARYLAND AUTOMOBILE INSURANCE FUND;
VITTO PHILLIP LOMBARDO; SHAWNICE COTTON; PRESTON MAURICE
HAWKINS; JOHANNES MARIE WILSON; ESTATE OF LARRY SETH
GRIFFIN; JAMIE ANNA REEDER,

Defendants – Appellees,

and

JAY DOUGHERTY; ERIC EUGENE BALLARD; ANTHONY PANZO; EDWIN J.
DOUGHERTY; GEORGE PERDUE USED CARS, INCORPORATED,

Defendants.

Appeal from the United States District Court for the District of
Maryland, at Baltimore. William M. Nickerson, Senior District
Judge. (1:05-cv-01107-WMN)

Argued: December 4, 2008          Decided: April 10, 2009

Before KING and DUNCAN, Circuit Judges, and Rebecca Beach SMITH,
United States District Judge for the Eastern District of
Virginia, sitting by designation.

Affirmed by unpublished opinion. Judge Smith wrote the majority
opinion, in which Judge King concurred. Judge Duncan wrote a
separate concurring opinion.

**ARGUED:** William C. Parler, Jr., PARLER & WOBBER, Towson, Maryland, for Appellant. Donald S. Saiontz, James Kevin MacAlister, SAIONTZ, KIRK & MILES, P.A., Baltimore, Maryland, for Appellees. **ON BRIEF:** Phillip S. Anthony, PARLER & WOBBER, Towson, Maryland, for Appellant. Arthur M. Rubenstein, Baltimore, Maryland; Gerald F. Gay, ARNOLD, BACOT, GAY & DARBY, P.A., Baltimore, Maryland, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

SMITH, District Judge:

In July 2004, Larry Griffin ("Griffin") was killed in a car accident while driving a Monte Carlo, on loan to his girlfriend, Jennie Davis ("Davis"), from a used-car dealership. The dealership's insurer claimed that its policy did not cover the accident because Griffin did not have permission to drive the loaner car. After a two-day bench trial, the district judge concluded that Griffin had implied permission to drive the loaner car. The district judge also found that the insurer had not presented conclusive evidence to rebut the presumption under Maryland law of permissive use. Thus, the district court concluded that the insurance policy covered this accident.

Harleysville does not contest the district court's findings of fact, but challenges its conclusions of law based on the factual findings. We review legal issues de novo. Fed. R. Civ. P. 52(a); see, e.g., Roanoke Cement Co., LLC v. Falk Corp., 413 F.3d 431, 433 (4th Cir. 2005). For the following reasons, we affirm.

I.

This dispute arises out of a July 1, 2004, accident involving a car loaned by Perdue's Used Cars to Davis while her car was being repaired. Perdue's Used Cars had an automobile insurance policy with Harleysville Mutual Insurance Company ("Harleysville"). The omnibus clause of the policy defined an

3

"insured" as "anyone else while using with your permission a covered 'auto' you own[.]" (J.A. 802.) No party disputes that the policy covers the loaner car given to Davis, but Harleysville claims that Griffin, the driver at the time of the accident, is not an "insured" because he lacked permission from either Perdue's Used Cars or Davis to drive the loaner car.

Harleysville brought suit in the United States District Court for the District of Maryland to establish that it had no duty to defend or indemnify for claims arising out of this accident.[1] On November 10, 2007, the district court found that Harleysville had a duty to indemnify and defend Davis for all claims arising against her from this accident, because she was indisputably a permissive user of the loaner car. The district court found genuine issues of material fact relating to whether Griffin had implied permission from Davis to drive the loaner car on the night of the accident.

Following the two-day bench trial, the district judge found the following facts, which have not been challenged on appeal. Davis regularly drove a 1996 Ford Taurus purchased from Perdue's Used Cars. On June 30, 2004, Davis took the Taurus to the dealership for a repair under warranty. When told that the car

---

[1] On March 3, 2006, the district court entered a consent final judgment limited to claims between Perdue's Used Cars and Harleysville, which claims are not at issue on appeal.

4

would not be ready that day, Davis asked for a loaner car to drive to work and take her children to daycare. George Perdue ("Perdue"), the owner of Perdue's Used Cars, testified that he authorized the loan of a 2000 Monte Carlo, and that he gave Davis no instructions about how she could use the car or about who was allowed to drive it. Since he was loaning a replacement car, Perdue testified that he expected that Davis would use the Monte Carlo just like the Taurus. According to Perdue, Davis did not receive any paperwork or oral instructions when the car was loaned. At trial, Perdue's son, David Perdue, testified that he--not his father--loaned Davis the Monte Carlo, and that he instructed Davis to use the car only for driving to work and daycare. Characterizing the testimony of Perdue's son as incredible, the district court found that Perdue's Used Cars gave Davis express permission to drive the car and that "no restrictions were placed on its use." (J.A. 1470.) Thus, the district court found that Davis was free to use the Monte Carlo as she would have used her Taurus, which included permitting another person to drive the car.

Griffin had been living with Davis for several months before the accident. Based on the testimony of numerous witnesses, the district judge found that Griffin had Davis's permission routinely to use her Taurus, without having to ask specifically to use the car on any given occasion. On the night

5

of the accident, Davis had picked up her children from daycare and returned home. Griffin was not home, although his Crown Victoria automobile was parked in the driveway. Davis left the keys to the Monte Carlo on the kitchen table, where she usually placed her car keys to the Taurus. After going to sleep early, Davis awoke when Griffin returned home and asked if she would like to go out to a club with him and some friends. She declined, saying that she had to get up early for work. While Davis later testified that she would not have let Griffin take the car out with friends if he had asked, the district court did not find that Griffin asked for permission to drive the loaner car, nor did the court find that Davis had placed any express restrictions on Griffin's use of this car. The district court found that Griffin picked up the keys to the Monte Carlo, from the same place he usually found the keys to the Taurus, and that he took the loaner car out with friends, "assuming he was free to use the loaner car in the same manner that he freely and frequently borrowed Davis's Taurus." (J.A. 1472.)

In the early hours of July 1, 2004, Griffin was killed in a car accident. Several witnesses from the hospital testified that Davis showed remorse for letting Griffin drive the Monte Carlo, but the district court did not assume from this testimony that Davis had earlier expressly told Griffin that he could take the loaner car. The district court concluded: (1) Davis had the

6

authority to permit Griffin to use the Monte Carlo; (2) Griffin had implied permission to drive the Monte Carlo based on his unrestricted use of the Taurus; (3) Harleysville had not rebutted the presumption under Maryland law that Griffin was a permissive user of the car; and, thus, (4) the Harleysville policy covered the liability and damages for the July 1, 2004, accident.

## II.

Under Maryland law,[2] words in an insurance policy receive their "customary, ordinary, and accepted meaning," as a "reasonably prudent layperson" would understand them. State Farm Mut. Auto. Ins. Co. v. DeHann, 900 A.2d 208, 226 (Md. 2006). While Maryland courts do not strongly construe insurance policies against the insurer, they do resolve ambiguities against the insurer as the drafter of the policy. Truck Ins. Exch. v. Marks Rentals, Inc., 418 A.2d 1187, 1191 (Md. 1980). Moreover, an "omnibus clause must be liberally construed in favor of the insured." DeJarnette v. Fed. Kember Ins. Co., 475 A.2d 454, 457 (Md. 1984).

---

[2] The parties agree that "[t]he substantive law of the State of Maryland governs the construction of the subject insurance contract in this case." (J.A. 105 n.2) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)).

In an automobile insurance policy, an "omnibus clause" is a provision that extends coverage to individuals who use a car with the owner's permission. See Blue Bird Cab Co., Inc. v. Amalgamated Cas. Ins. Co., 675 A.2d 122, 128 n.9 (Md. Ct. Spec. App. 1996). Under an omnibus clause, permission can be express or implied. See Bond v. Pa. Nat'l Mut. Cas. Ins. Co., 424 A.2d 765, 768 (Md. 1981) (reading the term "permission" in an automobile insurance policy "as though the word 'implied' precedes it"). The "existence of permission, whether express or implied, is largely a factual determination, and one which varies in response to the circumstances present in each case." Id. Implied permission may arise from the "course of conduct among those involved[.]" See State Farm Mut. Auto. Ins. Co. v. Martin Marietta Corp., 657 A.2d 1183, 1188 (Md. Ct. Spec. App. 1995).[3]

The use of a car must "fall within the scope of permission given by the insured[.]" Nationwide Mut. Auto Ins. Co. v.

_____

[3] Citing Maryland's anti-theft statute, Harleysville contends that permission to use a vehicle cannot be presumed or implied based on prior permission. Md. Code Ann., Transp., § 14-102(c) (for crimes of unauthorized use, owner's consent may not "be presumed or implied because of the owner's consent on a previous occasion"). As Maryland's anti-theft statute has never been applied in any civil case, we do not find that it abrogates Maryland's presumption of permission or examination of conduct-- which may include the driver's prior use of a vehicle--to support a finding of implied permission. See Martin Marietta Corp., 657 A.2d at 1187-88; see also Bond, 424 A.2d at 768.

8

Cont'l Cas. Co., 589 A.2d 556, 561. To determine if a specific use falls "within the purview of the omnibus clause, one must examine the total facts" presented by the case. Fed. Ins. Co. v. Allstate Ins. Co., 341 A.2d 399, 407 (Md. 1975)(internal quotation omitted). Express restrictions may limit the scope of permission. See Md. Indem. Ins. Co. v. Kornke, 319 A.2d 603, 611 (Md. Ct. Spec. App. 1974). But "comprehensive permission is more readily to be assumed where the use of the car is for social or non-business purposes," rather than business purposes. Fed. Ins. Co., 275 A.2d at 408.

Finally, Maryland courts presume that the driver of a car has the permission of the car's owner. See Martin Marietta Corp., 657 A.2d at 1187. The party arguing that the driver lacked permission has the burden of rebutting the presumption by conclusive evidence. Id. at 1188.


                                III.

The unrestricted language of the omnibus clause in the Harleysville policy with Perdue's Used Cars covers any use of an insured car, if permitted by Perdue's Used Cars or its permitted drivers. The omnibus clause extends coverage to "anyone else while using with your permission a covered 'auto' you own[.]" (J.A. 802.) From the perspective of a reasonable layperson, this language does not limit the authority of Perdue's Used Cars

9

to give others permission to use loaner cars insured by the Harleysville policy. Nor does this language restrict the authority of permitted drivers to allow others to use these loaner cars. Given Maryland's liberal construction of omnibus clauses in favor of policyholders, the Harleysville policy allows both Perdue's Used Cars and their permitted drivers to let others use an insured loaner car.

The district court found that Perdue's Used Cars gave Davis express permission to drive the Monte Carlo--a car insured by the Harleysville policy--and that Perdue's Used Cars did not restrict the use of the Monte Carlo by Davis. The district court further found that after this grant of express, unrestricted permission from Perdue's Used Cars to Davis, she had full authority to use the Monte Carlo as she would have used the Taurus, including to let others drive the Monte Carlo. These factual findings are not contested.

Importantly, further undisputed facts establish a course of conduct supporting the district court's conclusion that Griffin had implied permission from Davis to drive the Monte Carlo. On the night of the accident, Davis parked the Monte Carlo in her driveway where she parked the Taurus, and she left the keys on kitchen counter, just as she normally did. Griffin then found the keys in their usual place, and he saw the Monte Carlo where the Taurus was typically parked. Moreover, Griffin routinely

10

drove Davis's Taurus, without her being present in the car. The district judge found that Griffin had Davis's permission to "freely and frequently" drive the Taurus--a finding of fact that Harleysville does not contest. Further, Davis never forbade or restricted Griffin's use of the Monte Carlo.[4]

As a regular driver of the Taurus, who saw the Monte Carlo located in the same place as he would have seen the Taurus, Griffin had the same freedom to take the Monte Carlo loaner car as the car it replaced. The ongoing implied permission that Davis gave Griffin to drive her personal car did not vanish when she received a substitute car. Perdue loaned the Monte Carlo to Davis to replace the Taurus while finishing repairs on it, and to use as a substitute for her regular car. Thus, the Monte Carlo was meant to serve the same purposes, and to be for the same uses, as the Taurus. Davis clearly viewed the Monte Carlo as a replacement for the Taurus, as shown by where she drove the car, where she parked it, and where she put the keys. Griffin was a regular permissive user of Davis's Taurus. On these uncontested facts, we conclude that Griffin had implied

---

[4] Although Davis may have had uncommunicated restrictive thoughts and intentions on the night of the accident, she did not express them to Griffin. (J.A. 1471.)

11

permission to drive the Monte Carlo on the night of the accident.[5]

Finally, even if Davis had not submitted ample evidence of Griffin's implied permission to drive the loaner car, Harleysville has not presented conclusive evidence to rebut the presumption that Griffin had permission to use the Monte Carlo. See Martin Marietta, 657 A.2d at 1187-88. Indeed, Harleysville has not presented any evidence that Griffin actually lacked permission to drive the Monte Carlo. Harleysville has failed to rebut Maryland's strong presumption of permissive use.

IV.

The uncontested facts of this case show that Griffin had implied permission to drive the Monte Carlo and that he did not exceed the scope of this implied permission. Moreover, no facts rebut the presumption under Maryland law that Griffin was a permissive user of the loaner car. As a result, the district

---

[5] Harleysville contends that Griffin could not have driven the car within the scope of permission, unless Davis had expressly permitted Griffin to take the Monte Carlo the night of the accident. This position contravenes Maryland's settled law that permission may be express or implied and shown through a course of conduct. See Bond, 424 A.2d at 768; Martin Marietta, 657 A.2d at 1188. Moreover, Griffin's use of the car for the social purpose of going out with friends, rather than for a business reason, also supports the conclusion that he drove within the scope of his permission. See Fed. Ins. Co., 275 A.2d at 408.

court properly held that Harleysville's insurance policy covers this accident.

For the above reasons, the judgment of the district court is

<u>AFFIRMED</u>.

DUNCAN, Circuit Judge, concurring:

Although I ultimately agree with the majority's fine opinion, I do so on slightly different grounds and with somewhat greater reservations, which I write separately to express.

My concern flows from the majority's conclusion that under the facts of this case, Maryland's implied permission transfers between two vehicles. It is clear, as the majority states, that Griffin had permission to use Davis's Taurus and that Davis herself was a permissive user of the Monte Carlo. It is also clear under Maryland law a course of conduct between parties may be sufficient to give rise to implied permission to use an automobile. However, in this case there was absolutely no evidence that Griffin had permission--implied or express--to use the Monte Carlo. There is no evidence in the record that Griffin and Davis discussed the provenance of the Monte Carlo or that Griffin even knew that it was a loaner car to replace her Taurus. Leaving one's keys in the same place each night seems too small a quantum of evidence from which to imply permitted use.

Were we deciding the issue of whether to imply permissive use, I would prefer to certify the question of such transferability to the Maryland courts to resolve in the first instance. I am persuaded, however, that the issue before us is

14

slightly different.  This appeal presents the narrower question of whether Harleysville has carried its burden of proof.

As the majority notes, under Maryland law there is a presumption that a driver operating a vehicle has either express or implied permission to do so.  State Farm Mut. Auto. Ins. Co. v. Martin Marietta Corp., 657 A.2d 1183, 1186 (Md. Ct. Spec. App. 1995).  The existence of this presumption shifts the burden to Harleysville to establish that Griffin did not have permission to use the vehicle when the accident occurred.[*]  A party must show "conclusive evidence" to rebut the presumption as a matter of law.  In the absence of such conclusive evidence, the presumption is a question for the finder of fact.  State Farm, 657 A.2d at 1188; see also Empire Fire & Marine Ins. Co.

---

[*] The case law reveals that the presumption of permission functions as a burden-shifting device.  In State Farm, the case cited by both parties to support the presumption, the court employed the presumption in this way:

> There is, however, a presumption that Mansel did have permission to be driving at that time.  As soon as the stipulation was read to the jury, appellant had the benefit of this presumption, which shifted to appellees the burden of persuading the jury that Mansel did not have permission to be driving when the accident occurred.

657 A.2d at 1186 (internal citations omitted).  The court went on to say:

> The owner who asserts that the driver did not have permission should be held to the same burdens of production and persuasion as the owner who asserts that the driver was not an agent. . . . .[of showing] by a preponderance of the evidence that . . . [the driver] did not have permission.

Id. at 1187.

15

v. Liberty Mut. Ins. Co., 699 A.2d 482, 500 (Md. Ct. Spec. App. 1996).

As I noted earlier, in this case the record reflects an absence of evidence on the question of whether or not Griffin had permission to drive the Monte Carlo. I am not unsympathetic to Harleysville's plight. Proving a negative-- here, the absence of implied permission-- is a difficult burden. It is, however, the burden imposed by Maryland law, and Harleysville has failed to meet it.

For the narrow reason that Harleysville has failed to carry its burden of rebutting the presumption of permission, I concur in the majority's opinion.